UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Richard LAQUER, individually and on behalf of all those similarly situated,<br>　　Plaintiff,<br>v.<br>The Priceline Group Inc.,<br>　　Defendant. | Civil No. 3: 16-cv-860 (JBA)<br><br>March 28, 2017 |

### RULING ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Richard Laquer brings this action individually and on behalf of a putative class alleging unjust enrichment and misrepresentation in connection with Defendant's failure to refund amounts it charged to Plaintiff's credit card as "taxes" due on his car rental reservation made through Defendant's website where Plaintiff never picked up the rental car reserved for him. Defendant The Priceline Group ("Priceline") now moves [Doc. # 48] to dismiss the complaint.[1] For the reasons set forth below, Defendant's Motion is granted.

### I.     Factual Allegations

On June 2, 2015 Richard Laquer, a resident of Oklahoma, used the Defendant's website priceline.com to reserve a rental car in San Francisco for June 7, 2015, but he never showed up to rent the car on that date. (First Amended Complaint ("Compl.") [Doc. # 69] ¶¶ 1, 11, 14, 17.) Mr.

---

[1] Plaintiff filed his First Amended Complaint [Doc. # 69] on Friday, November 10, 2016 in accord with the Court's scheduling order. Defendant has moved [Doc. # 70] to strike the Amended Complaint because it added factual pleadings and legal argument outside the scope of amendments permitted by the Court after the August 12, 2016 pre-filing conference. At oral argument, the Court concluded that, aside from an added legal theory, no material change was made to the original complaint and the motion to strike was denied. References in this opinion are to paragraphs from the Amended Complaint.

Laquer used Defendant's "Name Your Own Price" feature to bid $35.00 on the rental, resulting in a reservation for a car from Hertz at the San Francisco International Airport. (*Id.* ¶¶ 12-13.) On the same day Mr. Laquer reserved the vehicle, Priceline charged Mr. Laquer $54.05 for this reservation, which Plaintiff alleges included a $19.05 charge for "Taxes and Fees" and $35.00 for the daily rental of the vehicle. (*Id.* ¶¶ 14.) Although Mr. Laquer never picked up the vehicle, Defendant did not refund any portion of the $54.05 to Mr. Laquer, and it did not remit to the State of California (or to any other local, state or federal authority) any part of the charge for "Taxes and Fees." (*Id.* ¶¶ 17, 21-22.) Hertz likewise did not refund any part of this charge to Mr. Laquer, and he alleges on information and belief that Priceline did not require Hertz to pay any part of the $19.05 to the State of California. (*Id.* ¶¶ 23, 25.)

Mr. Laquer does not allege that Priceline failed to transmit to Hertz any portion of the "Taxes and Fees." He does not allege that he ever requested a refund from Priceline or from Hertz, and he does not allege that he has requested a refund from the California Board of Equalization.

## II.   Discussion

Before attacking the legal sufficiency of Plaintiff's pleadings, Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1), arguing that Plaintiff lacks both Article III and prudential standing. Because the Court agrees that Mr. Laquer lacks prudential standing, it will dismiss on this ground.[2]

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

The Supreme Court has "established that the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A

> party must demonstrate that (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. The 'injury in fact' requirement has been characterized as an invasion of a legally protected interest.

*Green Island Power Auth. v. F.E.R.C.*, 577 F.3d 148, 159 (2d Cir. 2009) (internal quotation marks, citations, and alterations omitted).[3] As laid out in the discussion of prudential standing below, Plaintiff's allegation of an injury in fact fails because California law treats incorrectly collected use taxes as debts to the state, and any injury resulting from such improper collection by Priceline would belong to California.

"The prudential limitations on jurisdiction require that a plaintiff establish that he or she is the proper proponent of the rights asserted; a litigant may not raise the rights of a third-party, or assert speculative, conjectural or generalized grievances more appropriately resolved by a governmental body, other than the courts." *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1346–47 (2d Cir.1989); *Am. Psychiatric Assoc. v. Anthem Health Plans*, 50 F. Supp. 3d 157,

---

[3] Plaintiff seeks an injunction "enjoining Priceline from charging and collecting any future 'Taxes & Fees' unless the vehicle rental is completed." (Compl. ¶ 53d.) "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). This Ruling does not address the issue of whether Plaintiff could make this showing.

162 (D. Conn. 2014), *aff'd sub nom. Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016)

Although courts in this Circuit have found that overpayment of taxes and fees to online retailers can constitute economic injury to consumers sufficient for Article III standing, where states establish comprehensive regulatory frameworks that place the power to determine whether and how much tax is owed and to enforce payment of that tax in the hands of a tax authority, courts have dismissed claims by persons seeking to recoup taxes because they lack prudential standing. *Compare Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 410 (S.D.N.Y. 2010) ("[Plaintiff's] economic injury accrued at the time he paid the allegedly excess taxes, the service fees, and was charged the higher Retail Rate for his hotel reservation") with *Twp. of Lyndhurst, N.J. v. Priceline.com Inc.*, 657 F.3d 148 (3d Cir. 2011) (affirming that plaintiff lacked prudential standing because "the State legislature conditioned Lyndhurst's right to enact a local hotel occupancy tax on a specific enforcement regime—one where the [Tax Department] Director was the exclusive decision-maker charged with *determining* the amount of tax due and then *collecting* the related revenue.") (emphasis in original).

Mr. Laquer argues that he has standing because Priceline injured him when it did not refund the taxes it collected even though Mr. Laquer never consummated the car rental: "Plaintiff's core allegation [is that] there was never any tax due for any cancelled priceline.com reservation. Nevertheless, Priceline charged a 'tax' (that was never due), and Plaintiff alleges that Priceline took these 'tax' dollars and put them in its pocket." (Mem. Opp'n [Doc. # 58] at 2.) Defendant responds that it is California, rather than Plaintiff, who suffered any injury: "to the extent any taxes were not paid, it is the State of California that was injured and has standing to assert those claims—not Laquer." (Mem. Supp. Mot. to Dismiss [Doc. # 49] at 12.)

4

In his complaint, Mr. Laquer alleges that "it is illegal under the law of the United States, or of any individual state or subdivision, for a vendor to collect a tax and then neither remit it to the taxing authority nor refund it to the customer." (Compl. ¶ 18.) He reiterates this point in his first count for unjust enrichment: "Priceline Group, in charging 'Taxes and Fees' for a rental or purchase transactions that did not complete, violated various local, state and Federal law regarding the charge and collection of taxes." (*Id.* ¶ 36.)

As an example of a law Priceline allegedly violated, Mr. Laquer cites California Revenue & Tax Code § 6204:

> The tax required to be collected by the retailer and any amount unreturned to the customer which is not tax but was collected from the customer under the representation by the retailer that it was tax constitutes debts owed by the retailer to this state.

(Compl. ¶ 38 (citing Cal. Rev. & Tax Code § 6204).)[4]

---

[4] Section 6204 applies only to imposition of California's use tax. The provision for sales tax is slightly different. The parties do not agree whether California's Sales Tax or its Use Tax applies to a car rental transaction. The Code and the Board's regulations clarify that the use tax is the applicable tax. *See* Publication 34, California State Board of Equalization, "Motor Vehicle Dealers," available at http://www.boe.ca.gov/pdf/pub34.pdf (last accessed March 28, 2017).

The Regulations promulgated to clarify the use tax declare that:

> In the case of a lease . . . the tax is measured by the rentals payable. Generally, the applicable tax is a use tax upon the use in this state of the property by the lessee. The lessor must collect the tax from the lessee at the time rentals are paid by the lessee and give him or her a receipt of the kind called for in Regulation 1686 . . . . The lessee is not relieved from liability for the tax until he or she is given such a receipt or the tax is paid to the state. When the lessee is not subject to use tax (for example, insurance companies), the sales tax applies. The sales tax is upon the lessor and is measured by the rentals payable.

Cal. Code Regs., tit. 18 § 1601.

This provision of the Code squarely fits Mr. Laquer's allegations. Section 6204 applies to "any amount [1] unreturned to the customer [2] which is not tax but [3] was collected from the customer under the representation by the retailer that it was tax. . . ." (*Id.*) First, Mr. Laquer alleges that the money was not returned to him. (See Mem. Opp'n [Doc. # 58] at 13.) Second, Mr. Laquer alleges that the money collected was not tax because he never consummated the car rental. (*Id.*) Third, Mr. Laquer alleges that Priceline represented to him that it was collecting the amount as tax. (*Id.*) Section 6204 declares that any such money withheld by Priceline under these circumstances "constitutes debts owed by the retailer to the state."

Under this statutory framework, it is California, rather than Mr. Laquer, to whom this amount is owed and it is the retailer who is liable to the state. "The use tax which is required to be collected by the retailer becomes the debt of the retailer to the state, and where the collection is not made, the retailer as such collection agent is liable for the default . . . ." *Bank of Am. Nat. Trust & Sav. Ass'n v. State Bd. of Equalization*, 209 Cal. App. 2d 780, 792–93 (Ct. App. 1962). Indeed, in *Bank of America*, the California appellate court emphasized that the retailer was required to collect the tax, even if it served merely as an intermediary furnishing customized checks that were printed and sold by a third-party printing company. *Id.* at 798. The state, as the one to whom the debt is owed, is the one who would be injured by a retailer's failure to remit monies incorrectly collected from consumers under the representation that they were tax.

Further, the Cal. Rev. & Tax Code makes clear that when a customer overpays the use tax, the state is the entity that refunds the money, not the retailer:

> Any overpayment of the use tax by a purchaser to a retailer who is required to collect the tax and who gives the purchaser a receipt therefor . . . shall be . . . refunded by the state to the purchaser.

6

Cal. Rev. & Tax Code § 6901.[5]

Assuming Mr. Laquer's allegations to be true for the purpose of deciding this Motion, Priceline owes a debt to California and Mr. Laquer may seek a refund of this money from California by presenting his receipt to the Board of Equalization under the refund provision of § 6901. The doctrine of prudential standing prevents Mr. Laquer from suing Priceline to recover this money because "a plaintiff may ordinarily assert only his own legal rights, not those of third parties" and it is California to whom Priceline owes a debt under § 6204. *Am. Psychiatric Ass'n*, 821 F.3d at 358 (distinguishing prudential standing from so-called statutory standing and listing exceptions to general doctrine).

### III.   Conclusion

Because Mr. Laquer lacks prudential standing, Defendant's Motion is granted and Plaintiff's complaint is dismissed. The Clerk is requested to close this case.

IT IS SO ORDERED.

/s/
_____
Janet Bond Arterton, U.S.D.J.
Dated at New Haven, Connecticut this 28th day of March 2017.

---

[5] § 6203 of the Cal. Rev. & Tax Code imposes on a retailer the obligation to collect the use tax at the time "amounts are paid." Since Mr. Laquer alleges that he paid for his rental vehicle on June 2, 2015, and since he alleges that Priceline was a "vendor" (*see* Compl. ¶ 41), this Ruling assumes without deciding that Priceline was obligated under California law to collect the use tax at the time it collected payment from Mr. Laquer.